SO ORDERED: March 20, 2018.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| DELE BABATUNDE ODUYEMI, | ) Case No. 16-06373-JMC-7 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ABDULLAHI YUSUF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 16-50353 |
| | ) |
| DELE BABATUNDE ODUYEMI, | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for a bench trial on August 31, 2017. Plaintiff Abdullahi Yusuf ("Yusuf") appeared by counsel Carrie L. Breedlove. Defendant Dele

Babatunde Oduyemi ("Debtor") appeared *pro se*. At the conclusion of the trial, the Court took the matter under advisement.

The Court, having reviewed the evidence presented at the trial, and the other matters of record in this adversary proceeding; having weighed the credibility of the witnesses; having heard the presentations of Debtor and counsel for Yusuf at the trial; and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

### **Collateral Estoppel/*Res Judicata***

On July 11, 2013, Yusuf filed a complaint against Debtor and others in the Marion Superior Court (the "State Court"), Cause No. 49D01-1307-CT-027159 (the "State Court Case"), asserting claims for fraud, conversion and intentional infliction of emotional distress. On April 1, 2016, the State Court entered the *Default Judgment against Defendants, Jointly and Severally, Dele Oduyemi, d/b/a Diamond Dove Auto; Dele Oduyemi, Individually; and Diamond Dove Auto, LLC*, whereby judgment was entered in favor of Yusuf and against Debtor (as described therein) in the amount of $35,915 (the "Judgment"). The State Court did not allocate the Judgment amount among the various causes of action.

At the beginning of the trial, Yusuf argued that the Judgment should be given *res judicata* effect, and the Court reserved that issue for decision after the trial.

"The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the full faith and credit statute, which requires federal courts to refer to the preclusion law of the State in which judgment was rendered." *Communitywide Fed. Credit Union v. Laughlin (In re Laughlin)*, 2014 WL 789127, at *5 (N.D. Ind. 2014) (citations omitted).

Indiana uses a two-prong test[1] for the offensive use of collateral estoppel[2] adopted by the Indiana Supreme Court in *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993), which is: (1) "whether the party in the prior action had a full and fair opportunity to litigate the issue"; and (2) "whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case." *Id.*

The record before the Court includes the Judgment (Ex. 1) and the State Court Case docket (admitted by judicial notice). Taken together, these documents do not present the Court with enough information to determine whether there is an identity of issues between the State Court Case and this adversary proceeding such that Debtor had a full and fair opportunity to litigate such issues in the State Court Case.[3] For example, the Court does not have the standard against which each of the causes of action would have been litigated in the State Court Case (civil conversion or criminal conversion; statutory fraud or common law fraud). To further illustrate, if one of the causes of action in the State Court Case was criminal conversion, the Court has serious doubts about whether the identity of issues exists because the "knowing or intentional" component of criminal conversion under Indiana law "is not necessarily the same"

---

[1] These factors are non-exhaustive. Other considerations are discussed in *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1038-39 (Ind. 1993).

[2] "The term 'offensive' collateral estoppel has been used to describe the situation where the 'plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party.'" *Tofany*, 616 N.E.2d at 1037 (quoting *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n.4, 99 S.Ct. 645, 649 n.4, 58 L.Ed.2d 552 (1979)).

[3] *See Kriescher v. Gibson (In re Gibson)*, 521 B.R. 645, 653 (Bankr. W.D. Wisc. 2014) ("facts essential to each component of the Judgment must satisfy the elements of a discharge exception. One illustrative reason for this is that the discharge exceptions the Plaintiffs rely on require an inquiry into the Defendant's state of mind. *See McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000) (section 523(a)(2)(A) confines nondischargeability to actual fraud, 'when the debtor is guilty of intent to defraud'); *In re Weber,* 892 F.2d 534, 538 (7th Cir. 1989) (embezzlement pursuant to section 523(a)(4) requires 'fraudulent intent or deceit'); *Bullock v. BankChampaign, N.A.,* ––– U.S. ––––, 133 S.Ct. 1754, 1757, 185 L.Ed.2d 922 (2013) (defalcation under section 523(a)(4) requires 'a culpable state of mind'); *Jendusa–Nicolai v. Larsen,* 677 F.3d 320, 322–23 (7th Cir. 2012) (section 523(a)(6) requires injurer *desire* to inflict injury or *know* it was highly likely to result).")

as "willful and malicious" injury under federal bankruptcy law. *See Garoutte v. Damax, Inc.*, 400 B.R. 208, 213-14 (S.D. Ind. 2009).

Therefore, the Court declines to give preclusive effect to the Judgment entered in the State Court Case as to the issue of nondischargeability and will instead analyze whether the facts proven at trial, particularly with respect to scienter, support a conclusion of nondischargeability. The Court does recognize, however, that the debt owed by Debtor to Yusuf has been liquidated in the State Court Case by virtue of the Judgment entered in favor of Yusuf and against Debtor in the amount of $35,915.

### **Findings of Fact**

At the conclusion of the trial, the Court announced from the bench that this was a very difficult adversary proceeding to decide. Both Yusuf and Debtor were sworn under the penalties of perjury to tell the truth and, based on their testimony, they cannot both be telling the truth.

The Court has taken a great deal of time, probably longer than Yusuf, Debtor or the Court would like, to weigh the credibility of each witness, to look for indicia of the truthfulness of the testimony in the documents admitted into evidence, and otherwise to reconcile the contradictory testimony. As noted below, the Court made some findings of fact based on the evidence, but could not make other findings of fact because of a lack of credible evidence.

1. On August 17, 2016, Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[4] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

2. On December 3, 2016, Debtor received his general discharge.

---

[4] All statutory references hereinafter are to the Bankruptcy Code unless otherwise noted.

3. On December 1, 2016, Yusuf timely filed a *Complaint Objecting to Discharge Under 11 U.S.C. § 523(a)(6)* (Docket No. 1) to initiate this adversary proceeding, wherein Yusuf alleges that the Judgment owed to Yusuf is nondischargeable under § 523(a)(6).[5]

4. Yusuf knew Debtor through a prior transaction where Yusuf purchased a Toyota Highlander from the car business Debtor runs known as Diamond Dove Auto ("DDA"), a limited liability company of which Debtor has a 75% ownership interest.

5. Debtor was licensed or authorized to bid for vehicles from "Copart," an auction company for salvage cars, via Copart's vehicle auction website. Yusuf reviewed vehicles available for purchase through the website and found a vehicle he was interested in bidding on – a 2011 Honda Odyssey (the "Vehicle") located in Phoenix, Arizona. On the date of the auction sale, Yusuf went to DDA's office and Debtor, as the licensed or authorized bidder, submitted a bid for the Vehicle on Yusuf's behalf. At the conclusion of the auction, Yusuf's bid of $11,305 was the winning bid. Debtor directed Yusuf to deposit the winning bid amount into DDA's account within one week of the auction or the sale would be cancelled and Yusuf would incur cancellation fees.

6. Within two or three days after the auction, Yusuf obtained a cashier's check dated 09-28-12 made payable to "Abdullahi Yusuf or Diamond Dove Auto" for $11,305 (the "Funds").[6] Yusuf endorsed the cashier's check and deposited it into DDA's bank account at JPMorgan Chase Bank, N.A. After deposit, Debtor had control of the Funds.

7. Debtor used a portion of the Funds to pay Copart for the Vehicle. Copart issued a Sales Receipt/Bill of Sale showing a sale date of 9/26/12, with the "buyer payment" of $11,105

---

[5] At trial, the Court clarified that Yusuf is proceeding pursuant to both §§ 523(a)(2)(A) and (a)(6).

[6] Yusuf testified that Debtor waived Debtor's $500 fee, which apparently was intended to compensate Debtor for the use of Debtor's Copart license/authorization to buy the Vehicle.

being made on 10/02/12.[7]  The Copart Sales Receipt/Bill of Sale contains the following handwritten notation at the bottom: "Title to the lot given to Joey with Bulldog Transportion" [*sic*].

    8.    From this point forward in the story, the parties gave differing accounts:

        a.    Yusuf testified that Debtor arranged for Bulldog Transportation ("Bulldog") to transport the Vehicle from Phoenix to Indianapolis.  The $200 difference between the winning bid amount ($11,305) and the buyer payment amount ($11,105) was paid by Yusuf to cover the transportation costs.  Debtor told Yusuf the Vehicle would be delivered within two weeks.  Yusuf testified that the Vehicle arrived in Indianapolis, but he never received the Vehicle or the title thereto.  The Vehicle was titled in Debtor's or DDA's name (as the party licensed/authorized by Copart to bid), and Yusuf believes Debtor sold the Vehicle to another party.[8]  With the Vehicle gone, Debtor told Yusuf that Yusuf should pick out another vehicle because Debtor still had the Funds.  Yusuf found another car from Dallas, Texas, bid on it and won.  However, "it's been taking a while, that car, too."  Debtor convinced Yusuf to look for and buy a third vehicle, but Yusuf felt Debtor was lying to him.  Yusuf called Copart directly, represented himself as a representative of DDA, and Copart told Yusuf that the purchase of the third vehicle was cancelled and the cancellation fee was paid.  At that point, Yusuf believed Debtor was not going to provide Yusuf with any vehicle in exchange for the Funds.  Yusuf spent several months trying to resolve the issue directly with Debtor – either to get a vehicle or

---

[7]    Pursuant to the Sales Receipt/Bill of sale, there was also $50 late charge incurred and paid on 11/14/12. There was no evidence presented with respect to this late charge.

[8]    Yusuf believes Debtor/DDA was paid three times for the Vehicle:  once by Yusuf; once by the other purchaser; and once by Debtor's/DDA's financing company which financed the purchase of the Vehicle from Copart.

get the Funds back – before filing the State Court Case. The failed transaction caused Yusuf to quit his job, obtain new employment with more flexible hours, and quit attending Ivy Tech Community College so he could take care of his family.

        b.      Debtor testified that Yusuf arranged for Bulldog to transport the Vehicle to Indianapolis, and that Bulldog delivered the Vehicle and the title thereto to Yusuf. Because DDA was the authorized purchaser of the Vehicle at the online auction, the Vehicle title reflected DDA as the owner.[9] Upon receiving the Vehicle, Yusuf determined that the Vehicle had too much damage to fix and took the Vehicle and the title to the Copart auction facility on Lafayette Road in Indianapolis. Copart re-auctioned the Vehicle. By the time of the second auction, DDA was in financial trouble. The proceeds from the second auction of the Vehicle were taken by DDA's floor plan financier. Debtor offered Yusuf a Toyota Sienna from Debtor's/DDA's lot on Washington Street to replace of the Vehicle, but Yusuf refused.

9.      The Court finds the following facts to be consistent between the varying descriptions of events outlined in ¶ 8 above:

        a.      Bulldog transported the Vehicle to Indianapolis.

        b.      Yusuf was never listed as the owner on the title to the Vehicle.

        c.      The Vehicle ended up in the hands of an unidentified third party (because it was either sold by Debtor/DDA or re-auctioned by Copart).

        d.      Debtor offered a replacement vehicle to Yusuf (by virtue of either Yusuf's subsequent attempts to obtain a vehicle through the Copart auction website using DDA's license/authorization or Debtor's offer of the Toyota Sienna from the car lot).

---

[9] Debtor testified that the Vehicle was supposed to be fixed before the title was transferred into Yusuf's name.

   e. Yusuf did not obtain any vehicle from Debtor in exchange for depositing the Funds into DDA's bank account.

   f. Debtor/DDA did not return the Funds to Yusuf.

10. There is insufficient documentary evidence and/or credible testimonial evidence[10] for the Court to make any further findings of fact.

## Conclusions of Law

1. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

2. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Exceptions to discharge under § 523 "are to be [construed] strictly against a creditor and liberally in favor of the debtor." *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). "The burden is on the objecting creditor to prove exceptions to discharge." *Id.* (citation omitted). The burden of proof required is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

***§ 523(a)(2)(A)***

6. Section 523(a) provides, in relevant part:

---

[10] By way of example, Yusuf's credibility is in question when he testifies that he could not have taken actions with respect to the Vehicle as alleged by Debtor because Yusuf does not have a Copart license/authorization, but Yusuf readily admits calling Copart and posing as a DDA representative to gather information about the third vehicle he tried to purchase through Copart's vehicle auction website. Debtor's credibility is in question when he disclaims any involvement with the Vehicle after it arrives in Indianapolis when he and/or DDA is considered the winning bidder because he/DDA is licensed/authorized to buy vehicles through Copart's vehicle auction website.

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>
> (2)     for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A)     false pretenses, a false representation, or actual fraud … .

7. The Seventh Circuit has noted material differences among the three possible grounds for nondischargeability under § 523(a)(2)(A) and has formulated two different tests, one for both "false pretenses" and "false representation" and another for "actual fraud." *See Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 699-700 (Bankr. N.D. Ill. 2002) (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)).

8. To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theories, a creditor must prove all of the following elements: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

9. "What constitutes 'false pretenses' in the context of § 523(a)(2)(A) has been defined as 'implied misrepresentations or conduct intended to create and foster a false impression.'" *Mem'l Hosp. v. Sarama (In re Sarama)*, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr. N.D. Ill. 1995) (internal quotations omitted)). "False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* at 928 (citation omitted).

10. A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement or conduct. *Deady v. Hanson (In re Hanson),* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010) (citing *Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001)). "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Id.* (citing *Trizna & Lepri v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992)). "An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact." *Scarpello*, 272 B.R. at 700 (citing *Jairath*, 259 B.R. at 314).

11. Justifiable reliance is an intermediate level of reliance which is less stringent than "reasonable reliance" but more stringent than "reliance in fact." *See Field v. Mans*, 516 U.S. 59, 72-73, 116 S.Ct. 437, 445, 133 L.Ed.2d 351 (1995). Justifiable reliance requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation" and imposes no duty on the creditor to investigate unless the falsity of the representation is readily apparent. *Id.* at 71 (quotations omitted). Justifiable reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id.* (quotation omitted).

12. "Scienter, or intent to deceive, is … a required element under § 523(a)(2)(A) whether the claim is for a false representation, false pretenses, or actual fraud." *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 495 (Bankr. N.D. Ill. 2016) (citations omitted).

13. A debtor's intent to deceive for purposes of the false pretenses and false representation prongs on § 523(a)(2)(A) "is measured by a debtor's subjective intention at the

time the representation was made." *Scarpello*, 272 B.R. at 700 (citing *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr. N.D. Ill. 1998)). "Because direct proof of fraudulent intent is often unavailable, fraudulent intent may be inferred from the surrounding circumstances." *Hanson*, 432 B.R. at 773 (internal citations omitted).

14. "[A]ctual fraud is broader than misrepresentation," *McClellan*, 217 F.3d at 893, in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Scarpello*, 272 B.R. at 700 (citing *McClellan*, 217 F.3d at 894). "Actual fraud" is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (internal citations omitted). *See also Husky Int'l Elec., Inc. v. Ritz*, -- U.S. --, 136 S.Ct. 1581, 1586, 194 L.Ed.2d 655 (2016) ("The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'") (quotation omitted). In such cases, a creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Hanson*, 432 B.R. at 772 (citing *McClellan*, 217 F.3d at 894).

15. "[T]he focus of an 'actual fraud' claim is on the defendant's state of mind at the time of his purportedly fraudulent conduct." *Merritt v. Wiszniewski (In re Wiszniewski)*, 2010 WL 3488960 at *5 (Bankr. N.D. Ill. 2010) (citation omitted).

*§ 523(a)(6)*

16. A debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" may be excepted from discharge pursuant to § 523(a)(6).

"Bankruptcy courts in [the Seventh Circuit] have focused on three points: (1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citations omitted).

17. Injury "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.' The injury need not have been suffered directly by the creditor asserting the claim. The creditor's claim must, however, derive from the other's injury." *Id.* (internal citations omitted).

18. "Willfulness requires 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.' " *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original)). " 'Willfulness' can be found either if the 'debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury.' " *Id.* (quotation omitted).

19. Maliciousness requires the debtor to act "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (quotation omitted). The Seventh Circuit recently reaffirmed its definition of maliciousness from *Thirtyacre* as good law. *Horsfall*, 738 F.3d at 774-75.

*Reasoning*

20. The Court has found facts sufficient to support the simplified version of events from Yusuf's perspective: Yusuf purchased the Vehicle; Yusuf paid Debtor/DDA for the Vehicle; and Debtor did not deliver the Vehicle or return the Funds to Yusuf. The question for this Court – whether the Judgment should be excepted from discharge – requires the Court to look beyond the facts of the failed transaction to examine Debtor's state of mind at the time of

the failed transaction and determine whether Debtor was acting with fraudulent or deceptive intent (§ 523(a)(2)(A)) and/or acting willfully and maliciously (§ 523(a)(6)).  Yusuf argues that:

    a.    Debtor obtained the Funds through false pretenses and false representations.

    b.    Debtor falsely represented to Yusuf that Debtor was able to purchase the Vehicle and deliver the Vehicle to Yusuf.

    c.    Yusuf relied on such representations when delivering the Funds to Debtor.

    d.    Debtor knowingly made such representations with the intent to defraud Yusuf by either keeping the Funds and/or not delivering the Vehicle to Yusuf.

    e.    Debtor's acts caused injury to Yusuf in that Yusuf had to change jobs and quit college to take care of his family because, at the end of the day, Yusuf did not obtain a Vehicle and lost over $11,000.

21.    Based on the record, the Court cannot conclude with any degree of certainty what Debtor's intent was.

    a.    Yusuf did not offer direct proof of intent, but rather offered certain "surrounding circumstances" to support an inference of fraudulent intent, including (i) Debtor was paid three times for the Vehicle, and (ii) three failed attempts to secure a vehicle through the Copart auction website.  The Court could not find, based on credible evidence, that these surrounding circumstances are in fact true, and even if the Court had, these circumstances would not rise to the level of supporting an inference of fraudulent intent.

        b.        Likewise, there is not credible evidence upon which Court can conclude that the injury Yusuf testified to have suffered was willfully and maliciously caused by Debtor.

22.        The Court has a tremendous amount of sympathy for the situation in which Yusuf finds himself, but the credible evidence presented does not support a conclusion that what happened between Yusuf and Debtor was anything more than a failed business transaction.

23.        Yusuf has failed to meet his burden to prove that the Judgment should be excepted from discharge pursuant to §§ 523(a)(2)(A) and/or (a)(6). Therefore, the Court concludes that the Judgment is not excepted from discharge.

## Decision

Based on the foregoing, the Court hereby concludes that the Judgment owed by Debtor to Yusuf is not excepted from discharge pursuant to §§ 523(a)(2)(A) or (a)(6).

The Court will enter judgment consistent with these findings of fact and conclusions of law contemporaneously herewith.

# # #